**OUTTEN & GOLDEN LLP**
Kathleen Peratis
685 Third Avenue, 25th Floor
New York, New York 10017
(212) 245-1000

**MOBILIZATION FOR JUSTICE**
Anamaria Segura, of counsel to
Jeanette Zelhof, Esq.
100 William Street, 6th Floor
New York, NY 10038
(212) 417-3707

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

JESUS MARTINEZ,                                    :
                                                   :        Civil Docket No. 18 Civ. 7009
                        Plaintiff,                 :
                                                   :        **COMPLAINT**
        - against -                                :
                                                   :
CHESTNUT HOLDINGS OF NEW YORK, INC.,  :
219 LLC, and PRANA REAL ESTATE EQUITY  :
FUNDS, LLC,                                        :
                                                   :
                        Defendants.                :
-------------------------------------------------------------X

## NATURE OF THE ACTION

1.      Plaintiff Jesus Martinez ("Mr. Martinez" or "Plaintiff") brings this action against

Defendants Prana Real Estate Equity Funds, LLC ("Prana"), Chestnut Holdings of New York

("Chestnut"), and 219 LLC (collectively "Defendants") to seek redress for violations of the

Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), Fair Labor Standards Act, 29

U.S.C. § 201, *et seq.* ("FLSA"), New York Labor Law § 195(3), *et seq.* ("NYLL"), 12 NYCRR

§§ 142-2.7, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.*

("NYCHRL").

2.     Mr. Martinez lives in Bronx, New York with his wife and family.  Until he was fired in October 2016, Mr. Martinez successfully worked for approximately nine-and-a-half years as a residential superintendent in a 54-unit, five story Bronx building located at 219 East 196th Street ("the Building") owned at all relevant times by Defendants.

3.     Mr. Martinez worked approximately 67 hours per week, but Defendants paid him for only 40 hours of work each week and created inaccurate records of his time worked.

4.     Shortly after suffering a knee injury on the job, Mr. Martinez requested and took three days of doctor-prescribed medical leave to attempt to recuperate from his injury.  On October 11, 2016, three days after returning from his medical leave, Chestnut and 219 LLC (collectively "the Chestnut Defendants") fired him with no explanation.  Shortly thereafter, the Chestnut Defendants commenced eviction proceedings against him and his family.

5.     Mr. Martinez brings this action to remedy the Chestnut Defendants' unlawful interference with and retaliation against him for exercising his rights under the FMLA, and their unlawful discrimination on the basis of his disability, in violation of the NYCHRL.

6.     Mr. Martinez also brings this action to remedy the Defendants' failure to pay minimum wage and overtime, in violation of the FLSA, and their failure to provide accurate wage statements pursuant to the NYLL and applicable regulations.

7.     Mr. Martinez seeks declaratory relief, compensatory, liquidated and punitive damages and all other appropriate relief pursuant to the FMLA and NYCHRL.  In addition, Mr. Martinez seeks declaratory relief, unpaid wages for work performed, liquidated and statutory damages, and other appropriate relief pursuant to the FLSA and NYLL.  Mr. Martinez also seeks reasonable attorney's fees, costs, pre-and post-judgment interest.

8.     By agreement of the parties, dated April 17, 2018, the statute of limitations for FLSA, FMLA, NYCHRL, and NYLL claims on behalf of Mr. Martinez was tolled from April 17, 2018 through July 28, 2018.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over Mr. Martinez's FMLA and FLSA claims set forth herein pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 2617 and 29 U.S.C. § 216(b) because these claims involve federal questions regarding the deprivation of his rights under federal law.

10.     This Court has supplemental jurisdiction over the NYLL and NYCHRL claims set forth herein pursuant to 28 U.S.C. § 1367, because these claims closely relate to the federal claims under FLSA and FMLA, having arisen from a common nucleus of operative facts, such that they form part of the same case or controversy.

11.     Defendants are subject to jurisdiction in New York because Defendant Chestnut is a New York real estate investment and management firm, with its principal place of business at 5676 Riverdale Avenue, Bronx, New York 10471, Defendant 219 LLC shares its principal place of business with Chestnut, and Defendant Prana maintains offices located at 333 West 52nd Street, Suite 600, New York, New York 10019.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred within the Southern District of New York and because Defendants operate their businesses therein.

## PARTIES

### Plaintiff

13.     Plaintiff Jesus Martinez ("Mr. Martinez") is a 61-year-old Dominican immigrant who lives in the Bronx with his wife and family.

14.     Mr. Martinez worked for the Chestnut Defendants as a residential superintendent in the Building for approximately six months, from April 2016 until he was fired in October 2016.  Prior to that, Mr. Martinez worked as a residential superintendent in the Building for Defendant Prana and Prana's subsidiary, 219 East 196th St., LLC ("219 East") for approximately nine years.

15.     At all times relevant and material to this action, Mr. Martinez was employed in New York State and was the Defendants' employee within the meaning of FMLA, FLSA, NYLL and NYCHRL.

**Defendants**

*Prana Real Estate Equity Funds*

16.     Upon information and belief, Defendant Prana Real Estate Equity Funds ("Prana") is a California corporation with offices located at 333 West 52nd Street, Suite 600, New York, New York 10019.

17.     Upon information and belief, during the relevant time period, Defendant Prana employed over 50 employees who were employed at or within 75 miles of the Building.

18.     Mr. Martinez worked for Prana for approximately nine years.  During all relevant times, Prana has been Plaintiff's employer within the meaning of the FMLA, FLSA and NYLL.  Prana has had the power to hire and fire Mr. Martinez, control the terms and conditions of his employment, maintain employment records, and determine the rate and method of any compensation provided to him.

19.     Upon information and belief, and as described below, at all relevant times, Defendant Prana constituted an enterprise engaged in commerce whose gross annual revenue is at least $500,000.  As more fully described below, Prana's employees handled goods and

materials that have moved in commerce, including maintenance and cleaning materials from out-of-state suppliers.

*Chestnut Holdings of New York, Inc. and 219 LLC*

20.     Defendant Chestnut Holdings of New York, Inc. ("Chestnut") is a New York real estate investment and management firm, with its principal place of business at 5676 Riverdale Avenue, Bronx, New York 10471.

21.     Upon information and belief, Defendant 219 LLC is a wholly-owned subsidiary of Chestnut, with its principal place of business also at 5676 Riverdale Avenue, Bronx, New York 10471.

22.     As more fully set forth below, Defendants Chestnut and 219 LLC (collectively "the Chestnut Defendants") are Defendant Prana's successors in interest under the FMLA and FLSA because they substantially continued Defendant Prana's operations of the Building after its purchase.

23.     From around April 2016 to October 11, 2016, the Chestnut Defendants were Mr. Martinez's employers within the meaning of the FMLA, FLSA, NYLL and NYCHRL.

24.      From around April 2016 to October 11, 2016, the Chestnut Defendants had the power to hire and fire Mr. Martinez, control the terms and conditions of his employment, maintain employment records, and determine the rate and method of any compensation provided to him.

25.     Upon information and belief, and as described below, the Chestnut Defendants constitute an enterprise engaged in commerce whose gross annual revenue is at least $500,000. As more fully described below, the Chestnut Defendants' employees handle goods and materials that have moved in commerce, including maintenance and cleaning materials from out-of-state suppliers.

5

## STATEMENT OF FACTS

26.     Mr. Martinez was hired as a residential superintendent to work in the Building in

or around February 2007, by its then-owner, 219 Valentine Associates, LLC ("219 Valentine").

The Building is a 54-unit, five story residential building, with apartments that are rented out to

individuals and families.  As a condition of his employment, 219 Valentine required that he live

in the basement apartment.  He accepted the position because his wife and four sons could live

with him.

27.     In or around July 2007, a few months after Mr. Martinez moved in and started the

job, 219 Valentine sold the Building to Defendant Prana and its New York subsidiary 219 East

196th St. LLC ("219 East").

*Mr. Martinez's Schedule, Hours and Job Duties*

28.     Throughout his employment at the Building, Mr. Martinez worked seven days,

approximately 67 hours per week.

29.     Mr. Martinez's regular duties included bagging and taking out trash and

recycling, sweeping and mopping the Building's common areas, cleaning the Building's doors,

walls and windows, as well as doing repairs in individual tenants' apartments like fixing leaks in

the kitchens and bathrooms, and repairing broken cabinets and other fixtures.

30.     In addition, Mr. Martinez sometimes painted the inside of the Building and inside

tenants' apartments, and in the winter, he was required to clear ice and snow from the patio, steps

and sidewalk.  He was also required to monitor and maintain the boiler, which he did daily.

31.     The Building is a five-floor walk-up with no elevator, and as a superintendent he

was required to walk up and down several flights of stairs multiple times during a shift.  He did

not have a porter to help him with the work in the Building and was the only superintendent.

32.     Upon information and belief, throughout his entire employment at the Building, Mr. Martinez regularly handled goods and materials that moved in interstate commerce and that originated out of state.  For example, Mr. Martinez used liquid cleaners like soap and bleach to clean the floors and walls of the Building, plastic garbage bags to collect and take out the garbage and recycling, shovels and salt to clear ice and snow, paint and paint brushes to paint in the Building and in tenants' apartments, and various tools like hammers, wrenches and screwdrivers for making repairs.

33.     Throughout his employment at the Building, Mr. Martinez performed his duties satisfactorily, and many tenants told him they thought he did a good job.

*Mr. Martinez's Employment with Prana and 219 East*

34.     Prana and 219 East employed various management companies to run the Building over the years, but the Building's sale and the change in management companies did not affect Mr. Martinez's schedule or work duties.  He continued working as a superintendent and performing the same duties throughout the changes in management and continued to work approximately 67 hours a week.

35.     Throughout his employment, Mr. Martinez was paid a flat rate for 40 hours of work per week.  At first, he was paid $375 per week ($9.38 per hour), but eventually received a raise to $426.28 per week ($10.67 per hour).  Although he worked approximately 67 hours each week performing his regular duties, Prana and 219 East did not pay Mr. Martinez for any work completed over 40 hours in one week.  As a result, Mr. Martinez's actual hourly rate was less than the legal minimum wage under the FLSA.

36.     During his employment with Prana and 219 East, Mr. Martinez never took longer than a two-week vacation.

37.     During his employment with Prana and 219 East, Mr. Martinez rarely took days off for illness, with the exception of a two-month period in 2011, when he was recuperating from colon surgery.

38.      During each year of his employment with Prana and 219 East, Mr. Martinez worked over 3,000 hours.

*Chestnut and 219 LLC's Purchase of the Building, and Continuation of Prana and 219 East's Operation of the Building*

39.     In April 2016, Defendant Prana sold the Building to the Chestnut Defendants, as part of a $46 million-dollar sale of ten Bronx apartment buildings from Prana to Chestnut.  According to records available on New York City's Automated City Register Information System (ACRIS), the Building was sold to "219 LLC, c/o Chestnut Holdings of New York, Inc." for approximately $7 million on April 6, 2016.

40.     Rather than employ management companies, the Chestnut Defendants managed the Building themselves.

41.     Upon information and belief, at the time of the Building's purchase, Defendant Chestnut owned and managed close to one hundred residential apartment buildings in New York City.  Upon information and belief, it continues to do so, and employs at least one superintendent at each of those buildings.

42.     After it purchased the Building, the Chestnut Defendants substantially continued Defendant Prana's operations of the Building as before and are successors-in-interest to Defendant Prana pursuant to the FMLA and FLSA.

43.     Upon information and belief, around the time the Chestnut Defendants purchased the Building, they charged tenants a monthly rent of approximately $1,000 for one-bedroom apartments, approximately $1,300 for two-bedroom apartments, and approximately $1,700 for

three-bedroom apartments.  Upon information and belief, the Chestnut Defendants' gross annual revenue is at least $500,000.

44.     Just as before, Mr. Martinez's schedule and job duties remained substantially unchanged following the Chestnut Defendants' purchase of the Building.  Mr. Martinez's schedule and duties remained the same, and he continued to work approximately 67 hours per week.

45.     Even though he worked approximately 67 hours per week, Mr. Martinez continued to be paid for only 40 hours in each week and continued to be paid a weekly rate of $426.28, making his hourly rate less than the legal minimum wage.  On his paystubs, under "Total Hrs Worked," the Chestnut Defendants listed only 40 hours, and his listed rate of pay was $10.67 an hour.  The Chestnut Defendants did not list any overtime rate of pay on his paystubs.

46.     In Mr. Martinez's experience, the Chestnut Defendants continued to operate the Building in the same way as had it had operated under Prana and 219 East's ownership.  The tenants remained the same, and they made no major changes to the interior or exterior of the Building.  Mr. Martinez continued to use the same tools and equipment on the job.  Although the Chestnut Defendants required additional paperwork to be completed to memorialize jobs completed, Mr. Martinez's job remained substantially the same.

47.     Upon information and belief, the Chestnut Defendants employed new upper-level managers following the Building's purchase, but, along with Mr. Martinez, the residential superintendents in the nearby buildings previously owned by Prana and 219 East remained employed.

*Defendants Chestnut and 219 LLC Issue Mr. Martinez Disciplinary Warnings Unrelated to Job Performance*

48.     Mr. Martinez had never been disciplined for any reason while working under the Prana and 219 East, or their predecessors.

49.     However, after the Chestnut Defendants purchased the Building, Mr. Martinez was issued warnings completely unrelated to his job performance.  For example, in April and May 2016, his supervisor, Cesar Morales ("Mr. Morales"), issued him two disciplinary reports, both complaining about his sons' occupancy in the basement.  Mr. Martinez responded to Mr. Morales immediately, and explained that his family's occupancy in the basement with him had been expressly allowed when he was hired.  He did not receive any further written warnings related to his sons' residing with him after May 2016, and the Chestnut did not bring eviction proceedings to remove them from the basement following these warnings.

50.     Mr. Morales also issued three disciplinary reports to Mr. Martinez on June 22, 2016 concerning his family keeping two dogs in their apartment, as well as his sons keeping a metal frame and a basketball hoop in the basement.  The warnings instructed him to remove the dogs and the other items from the Building, which he did promptly.  After that, Mr. Martinez was issued no other warnings.

*Mr. Martinez Suffers an Injury on the Job and Takes Three Days of Medical Leave*

51.     On September 30, 2016, as he was walking down a set of steps to check the water level in the Building's boiler, Mr. Martinez fell and felt a sharp pain in his right knee.  He tried to get up but was unable to do so on his own, and had to call out to his wife, who was nearby. His wife and two of her friends, who were visiting at the time, had to help Mr. Martinez get up.

52.     Although he was in terrible pain and was incapacitated for several days, Mr. Martinez was unaware of how severely he had been hurt until months later, when a medical

specialist eventually diagnosed him with a meniscal tear stemming from that injury.  The

meniscal tear ultimately required reparative surgery.  As more fully described below, his medical

condition was a qualifying serious health condition pursuant to the FMLA, and a disability

pursuant to the NYCHRL.

      53.    Mr. Martinez did not immediately report his injury to Mr. Morales because he

was afraid he would be fired, and he could not afford to lose his job.

      54.    Mr. Martinez's injury caused him severe pain on the day of the accident and in the

days immediately following.  Mr. Martinez was impaired in his ability to walk or place weight

on his right knee.  He walked with difficulty and with a limp, and he was unable to walk up and

down stairs.  He tried to do his job, but he was too incapacitated to do it without intense pain in

his knee.  Because he was afraid of being fired, he ultimately asked his two adult sons to perform

much of the superintendent work on September 30, October 1 and October 2, 2016.

      55.    On those days, Mr. Martinez was aware of Mr. Morales observing the way he was

limping.  Mr. Morales asked Mr. Martinez multiple times if there was something wrong with his

knee.  Mr. Martinez was still afraid of being fired and thus did not want to make a big deal out of

his injury, but he responded to Mr. Morales that his knee was hurting.

      56.    On the evening of October 2, 2016 his knee was very swollen and the pain was

unbearable, so he visited Bronx-Lebanon Hospital Center, where a doctor performed x-rays and

gave him an injection for inflammation in his knee.  The doctor instructed him not to work the

following day (a Monday), to avoid further inflammation and gave him a note stating that he

could resume his full physical activity as of October 4, 2016.

      57.    The following day, on October 3, Mr. Martinez was in pain but was still afraid of

being fired.  As before, he tried to do his job instead of asking Mr. Morales for permission to

take the day off.  But the pain was such that he again asked his sons to help him perform the

superintendent work for that day and the next.

58.     On October 5 Mr. Martinez woke up with terrible knee pain and his knee was

very swollen.  Even though he was still afraid of being fired, he decided to visit a doctor that

morning and to inform Mr. Morales that he would need to miss work.  He called Mr. Morales

and told him that he needed to go to the doctor because of his knee pain.  Mr. Morales said

something to the effect of, "okay" but said nothing more.

59.     That day Mr. Martinez missed work and visited his primary care provider, Dr.

Amir Ansar-Ezabadi ("Dr. Ansar-Ezabadi"), who noted that his knee was inflamed, and

recommended that he see an orthopedist for further examination.  Dr. Ansar-Ezabadi advised

him to take the following three days off and gave him a note stating that he could return to work

on October 8, 2016.  The note instructed the receiver to contact Dr. Ansar-Ezabadi if additional

information was needed.

60.     Immediately after receiving the note, Mr. Martinez called Mr. Morales and

explained that his doctor had told him that he would need to miss work until October 8th due to

his knee injury.  Although he did not specifically request leave under the FMLA, he did make

clear that he would need to be absent from work because of his knee.  Mr. Morales did not say

much, but responded something to the effect of, "okay."  Mr. Martinez told him he would fax

Mr. Morales the doctor's note.  He faxed the note to Mr. Morales that day.  Mr. Morales did not

respond, but Mr. Martinez understood Mr. Morales' silence as approval of his requested three

days of medical leave.

61.     Mr. Morales did not ask Mr. Martinez for additional information about his knee injury, and, upon information and belief, even though the doctor's note instructed the receiver to contact Dr. Ansar-Ezabadi for additional information, Mr. Morales did not contact the doctor.

62.     At Mr. Martinez's request, his sons again completed much of the superintendent work from October 5 through October 7, 2016 because Mr. Morales did not send anyone to replace him for those days, and he was afraid that he would be fired if the work was not completed.

*The Chestnut Defendants Fire Mr. Martinez Less than a Week after Requesting Leave and Three Days Following His Return to Work*

63.     On October 8, 2016 (a Friday), even though he was still in pain and his knee was swollen, Mr. Martinez tried to return to performing his usual weekday duties because of his fear of being fired.  He still had trouble walking and going up and down stairs, and moved very gingerly, and Mr. Martinez noticed that Mr. Morales continued to observe him that day.  That weekend he also performed his duties, but in pain.

64.     The following Monday, on October 11, 2016, Mr. Morales called Mr. Martinez over to see him a couple of hours into his shift.  Mr. Morales handed him a termination letter on letterhead displaying "219 LLC" at the top, with Defendant Chestnut's name, address, telephone, fax and website at the bottom.  It was signed by Mr. Morales and did not provide a reason for his termination.

65.     Mr. Martinez's firing came three days after he exercised his rights under the FMLA by seeking medical leave and exercised his rights under the NYCHRL by seeking an accommodation for three days off from work.  By firing Mr. Martinez because he asked for and took medical leave, the Chestnut Defendants illegally interfered with Mr. Martinez's rights under the FMLA and illegally retaliated against him for exercising his FMLA rights.

13

66.     In addition, by firing Mr. Martinez because of his medical condition, the Chestnut

Defendants illegally discriminated against Mr. Martinez because of his disability, in violation of

the NYCHRL.

*The Chestnut Defendants Seek to Evict Mr. Martinez and his Family from their Home*

67.     On or around October 26, 2016, about two weeks after firing Mr. Martinez, the

Chestnut Defendants commenced a holdover action in Bronx County Landlord Tenant Court

(Index Number 63894/2016), seeking to evict Mr. Martinez and his family from their home.[1]

68.     Mr. Martinez was devastated to have lost his job and to have been sued in housing

court barely more than two weeks later.  He and his wife felt overwhelmed with anxiety and

worried constantly about how they would afford to move.

*The Defendants' Failure to Comply with Relevant Employment Laws and Regulations*

69.     None of the Defendants communicated to Mr. Martinez, verbally or in writing,

any information about any company policy concerning the FMLA or any type of medical leave,

including eligibility for leave, how to request it, or any prohibition on employers' interfering

with such leave or retaliation for employees' exercising their right to leave.

70.     None of the Defendants maintained any displays or postings of the premises of

the Building, or in the Defendants' offices, informing employees of their rights or

responsibilities under the FMLA or under any discrimination laws.

71.     None of the Defendants informed Mr. Martinez of his right to be paid for every

hour worked, or of his right to be paid overtime pay for hours worked over 40 in one week.

---

[1] That action was ultimately resolved through a settlement agreement whereby Mr. Martinez and his family agreed
to move out of the apartment.  Mr. Martinez complied with all terms of that settlement.

72.     None of the Defendants maintained any displays or postings on the premises of the Building, or in their offices, informing Mr. Martinez of his right to minimum wage and overtime payments.

73.     Defendants did not pay Mr. Martinez for any work hours completed over 40 in one week, nor did they pay him an overtime premium of one-and-a-half times his regular pay rate for work hours in excess of 40 hours in one week.

74.     Defendants did not provide Mr. Martinez with accurate written wage statements listing information required by New York Labor Law § 195(3), such as the dates of work his pay was meant to cover, his overtime pay rate, and hours worked.

75.     Upon information and belief, Defendants knowingly, intentionally, and willfully committed the acts alleged herein.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Unpaid Minimum Wage)
### (Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*)

76.     Mr. Martinez realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

77.     Defendants' failure to pay Mr. Martinez at the applicable hourly minimum wage for all hours worked violated Fair Labor Standards Act, 29 U.S.C. § 206(a).  As a result of those violations, Mr. Martinez is entitled to recover from Defendants, jointly and severally, his unpaid minimum wages and an equal amount in the form of liquidated damages, as well as reasonable attorney's fees and costs of the action, all in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Unpaid Overtime Wages)
### (Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq.)

78.     Mr. Martinez realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

79.     Defendants' failure to pay Mr. Martinez overtime wages for hours worked in excess of 40 hours per week at a wage rate of one-and-a-half times either his regular rate of pay, violated the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1). As a result of those violations, Mr. Martinez is entitled to recover from Defendants, jointly and severally, his unpaid overtime wages and an equal amount in the form of liquidated damages, as well as reasonable attorney's fees and costs of the action, all in the amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Failure to Provide Accurate Wage Statements)
### (New York Labor Law § 195(3), 12 NYCRR §§ 142-2.7)

80.     Mr. Martinez realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

81.     Defendants' failure to provide Mr. Martinez with accurate wage statements violated the New York Labor Law and applicable regulations, NYLL § 195(3), 12 NYCRR § 142-2.7.  As a result of those violations, Mr. Martinez is entitled to recover from Defendants, jointly and severally, damages of $250 for each work day that the violations occurred or continued to occur, up to $5,000, together with reasonable attorney's fees, costs of the action, and pre-judgment interest, all in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(Unlawful Retaliation)**
**(Family Medical Leave Act, 29 U.S.C. § 2601 et seq.)**

82.     Mr. Martinez realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

83.     By the acts and practices described above, the Chestnut Defendants discriminated and retaliated against Mr. Martinez for exercising his FMLA rights, in violation of the FMLA, 29 U.S.C. § 2615(a)(2).  As a result of those violations, Mr. Martinez is entitled to recover from the Chestnut Defendants, compensatory damages, liquidated damages, pre-judgment interest, reasonable attorney's fees and costs, all in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**(Unlawful Interference)**
**(Family Medical Leave Act, 29 U.S.C. § 2601 et seq.)**

84.     Mr. Martinez realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

85.     By the acts and practices described above, the Chestnut Defendants unlawfully interfered with Mr. Martinez's exercise of and attempts to exercise his FMLA rights, in violation of the FMLA, 29 U.S.C. § 2612(a)(1).  As a result of those violations, Mr. Martinez is entitled to recover from the Chestnut Defendants, compensatory damages, liquidated damages, pre-judgment interest, reasonable attorney's fees and costs, all in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**(Unlawful Disability Discrimination)**
**(New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 et seq.)**

86.     Mr. Martinez realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

17

87.     By the acts and practices described above, the Chestnut Defendants unlawfully discriminated against Mr. Martinez because of his disability in violation of the NYCHRL, N.Y.C. Admin. Code § 8-107(1)(a).  As a result of those violations, Mr. Martinez is entitled to recover from the Chestnut Defendants compensatory damages, punitive damages, costs, and reasonable attorney's fees, all in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request this Court enter a judgment:

1.     Declaring Defendants' acts, practices, and omissions complained of herein to be in violation of Mr. Martinez's rights under FLSA, FMLA, NYLL, and NYCHRL.

2.     Directing Defendants to pay Mr. Martinez unpaid wages under FLSA;

3.     Directing Defendants to pay Mr. Martinez liquidated damages under FMLA and NYCHRL;

4.     Directing Defendants to pay Mr. Martinez his back pay, front pay, equity awards, compensatory damages including future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and damages to compensate him for past and future emotional suffering, and pre- and post-judgment interest for violations of FLSA, FMLA, NYLL, and NYCHRL;

5.     Directing Defendants to pay Mr. Martinez exemplary and punitive damages, as available, commensurate with Defendants' ability to pay and sufficient to punish and deter continuation of Defendants' discriminatory and unlawful employment practices;

6.     Awarding Mr. Martinez reasonable attorney's fees, costs, and expenses as provided by law; and

7.    Awarding such other legal and further relief that this Court deems necessary, just,

and proper.

Dated:         August 3, 2018
               New York, New York

                                        Respectfully submitted,

                                        */s/ Kathleen Peratis*
                                        Kathleen Peratis

                                        **OUTTEN & GOLDEN LLP**
                                        Kathleen Peratis
                                        685 Third Avenue, 25th Floor
                                        New York, New York 10017
                                        Telephone: (212) 245-1000
                                        Facsimile: (646) 509-2060
                                        kp@outtengolden.com

                                        **MOBILIZATION FOR JUSTICE, INC.**
                                        Anamaria Segura, of counsel to
                                        Jeanette Zelhof, Esq.
                                        100 William Street, 6th Floor
                                        New York, New York 10038
                                        (212) 417-3707
                                        asegura@mfjlegal.org

                                        ***Attorneys for Plaintiff***